SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB #965128**
Scott.Kerin@usdoj.gov
**NICOLE M. BOCKELMAN, OSB #105934**
Nicole.Bockelman@usdoj.gov
**SARAH BARR, WSBA #40758**
Sarah.Barr@usdoj.gov
Assistant United States Attorneys
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:25-cr-00253-AB** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **HUGO GOMEZ-SOTO,** | |
| **Defendant.** | |

Everyday her son's smile greets her as she comes downstairs.  His picture rests on her mantle, next to the urn that holds his remains, along with the last book he was reading before he passed away.  Without him, the house is often very quiet and still.  His memory is one that his family and friends hold dear in their hearts, their souls, and their thoughts.  Jordan Feinstein-

///

///

**Government's Sentencing Memorandum**                                                                 **Page 1**

Smith (Jordan) was and will forever be 29-years old because on December 30, 2023, he died as a result of using fentanyl sold by the defendant.[1]



There is no sorrow as painful as the loss of a child – it is a grief so deep that it defies words. When Jordan passed away, not only did his life end, but it also permanently ripped a hole in the lives of those he left behind – hopes, dreams, and futures were destroyed. Jordan is forever trapped in time because his life was stolen from him at 29-years old by a fentanyl dealer selling death in both pill and powder form. His mother will never again be able to hug and kiss her son, his father will never again give him fatherly advice, his younger brother will never again be able to play 1-on-1 basketball with him, and his little sister, she will never again have her big brother there to say those things that made her laugh and smile. This loss and the family's pain is simple incalculable, and nothing will undo it. As his mother wrote in her Victim Impact

---

[1]    While the government does not typically refer to victims by their names in public documents Jordan Feinstein-Smith's family has asked that we do so and we have honored their wishes.

**Government's Sentencing Memorandum**                                      **Page 2**

Statement to the Court, "[a] day doesn't go by that I can't stop thinking about Jordan and how his life was cut short because Hugo sold him the lethal Fentanyl." This family's pain will last forever – well past whatever sentence the Court imposes.

This was a death that did not need to happen but it did because the defendant was selling fentanyl – a poison he knew could kill people, but he simply did not care. To the defendant, Jordan was merely another customer struggling under the weight of an addiction that he could prey upon and make money from, just like the defendant had done so many times before to others in California, Utah, Colorado, Washington, and here in Oregon.

This story is tragic. Nothing any of us do will undue the devastation that resulted from the defendant's actions and bring Jordan back to life. At sentencing, we will talk about the crime, the victim, the sentencing guidelines, the defendant, and in the end the parties will ask the Court to pass a final judgment. Jordan's case highlights the dangers of fentanyl and the absolute devastation that fentanyl dealers have unleashed upon the community, the innocent lives they have taken, the smiles they have erased, and the lives they have destroyed. Quite simply, illicit fentanyl kills and our country, our community, and this family has suffered greatly because of it. Whether or not the defendant intended Jordan's death does not change the outcome of this case and provides little, if any, solace to the family who lost their loved one.

In selling fentanyl, the defendant chose monetary gain over the risk of death he was imparting onto his customers. The defendant was selling an extremely addictive, destructive, and deadly poison, a poison he knew could kill people and he simply did not care about the havoc he wrought. The defendant's interest was not in the people whose lives he placed at risk, but rather in the money he was making. Now, following his convictions by a federal jury, he

**Government's Sentencing Memorandum**                                    **Page 3**

will finally face judgment for distributing fentanyl that resulted in the death of Jordan Feinstein-Smith.

The seriousness of the crime was highlighted by Congress when they mandated that such a conviction necessitates at least a 20-year mandatory minimum sentence of imprisonment and a maximum potential sentence of life imprisonment.[2]  Any person distributing fentanyl that results in death or serious bodily injury faces that same 20-year mandatory minimum sentence.  In this case, there are sufficient aggravating factors within the facts of the case as well as within the defendant's background, including his multiple drug dealing arrests and a prior drug dealing conviction, that warrants a sentence above the mandatory minimum sentence required by law.

Given the nature of this case, defendant's advisory sentencing guidelines, the societal harm caused by fentanyl, and the aggravating circumstances involving the defendant's prior drug dealing arrests and drug dealing conviction, we ask the Court to impose a sentence of 293 months' imprisonment, which is the high-end of the defendant's advisory sentencing guidelines, to be followed by a life term of supervised release.

The defendant will also very likely be deported to Honduras, again, as a result of his conviction.  He should never be allowed back into the country to deal drugs again.

///

---

[2]    For Congress, defendants convicted of distributing a Schedule I or II controlled substance resulting in death or serious bodily injury, who have a prior qualifying felony drug offense conviction, face a potential mandatory minimum sentence of life imprisonment.  *See* 21 U.S.C. §§ 841(b)(1)(A), (b)(1)(B), (b)(1)(C), and 851.  Courts have noted that "Congress' intent' [was] to 'put drug dealers ... on clear notice that their sentences will be enhanced if people die from using the drugs they distribute.'"  *United States v. Alvarado*, 816 F.3d 242, 249-50 (4th Cir. 2016).

**Government's Sentencing Memorandum**                                          **Page 4**

A.       **Summary of Proceedings.**

On April 13, 2026, a federal jury found the defendant guilty of two counts: in Count 1 the defendant was found guilty of distributing fentanyl that resulted in the death of Jordan Feinstein-Smith; and, in Count 2 the defendant was found guilty of possession with intent to distribute fentanyl, all in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C).  On Count 1, because the defendant distributed fentanyl that resulted in a death, the maximum sentence the Court may impose is a term of life imprisonment, a mandatory minimum sentence of 20-years' imprisonment, a fine of $1,000,000, and up to a life-term of supervised release.  There is also a $100 fee assessment.  On Count 2, the maximum sentence the Court may impose is a 20-years' term of imprisonment, a fine of $1,000,000, and up to three-years of supervised release.  There is another $100 fee assessment.

A Presentence Report (PSR) has been completed and the Court is well familiar with the facts of the case.  The government has no objection to the U.S. Probation Office's summary of the facts underlying the defendant's count of conviction (PSR ¶¶ 8 - 16), Sentencing Guideline calculations (PSR ¶¶ 22 - 30), previous conviction (PSR ¶ 33), prior criminal conduct (PSR ¶¶ 35 – 38), and his personal history and characteristics (PSR ¶¶ 40 – 56).

The defendant's conviction stemmed from his distribution of fentanyl.  On December 29, 2023, the defendant sold fentanyl to Jordan Feinstein-Smith.  Jordan was a 29-year-old, employed young man, struggling in an ongoing battle with fentanyl addiction.  In the last month of his life, Jordan Feinstein-Smith purchased, on average, $60 worth of fentanyl powder and $20 worth of fentanyl pills every 2 to 4 days from the defendant, who was obtaining his fentanyl from downtown Portland.  On December 29, 2023, per phone records, Jordan Feinstein-Smith

**Government's Sentencing Memorandum**                                                    **Page 5**

contacted the defendant at approximately 8:28 p.m. to purchase "20 blue and 90 powder" ($20 worth of fentanyl pills and $90 worth of fentanyl powder).

On December 30, 2023, Jordan used the fentanyl sold by the defendant and died as a result. After breakfast that morning, and before going to work, Jordan walked out to the shed in the backyard and used some of the fentanyl he bought from the defendant the night before. Moments later, after walking back into the house, Jordan collapsed on the floor. His mother heard him fall and she ran downstairs to save him. While she was on the phone with 911, she desperately attempted to save her son's life by administering multiple doses of Narcan and performing CPR, to no avail. Listening to the 911 call, as she fought with every ounce of her being to save her son's life, was heartbreaking. Medical personnel responded to the scene and transported Jordan to the hospital, where he was officially pronounced deceased. Police did not respond to the scene.

On December 31, 2023, Dr. Nicole Stanley with the Oregon State Medical Examiner's Office, performed an external examination of Jordan. Femoral blood was also drawn from the victim and submitted for analysis. After receiving the blood toxicology report completed by Oregon State Police Forensic Laboratory Forensic Scientist Shelli Martinez and based upon the totality of the circumstances surrounding his death, Dr. Stanley concluded that Jordan's cause of death was "fentanyl toxicity." Forensic Scientist Shelli Martinez testified that she analyzed the victim's femoral blood and that Jordan had more than 100 ng/mL of fentanyl within his blood, as well as 53 ng/mL of Norfentanyl, 1.2 mg/L Acetaminophen, and the presence of 4-ANPP. Ms. Martinez testified that this level of fentanyl is death inducing.

///

**Government's Sentencing Memorandum**                                    **Page 6**

On January 23, 2024, after a friend of the mother reached out to the police, Portland Police then met with Jordan's mother and interviewed her and collected Jordan's cellphone as evidence. She also gave them a container of fentanyl that her son had purchased from the defendant which she had found in the backyard shed.



On January 25, 2024, a Portland Police Bureau (PPB) Officer, posing as Jordan, used Jordan's phone to send a series of text messages to the defendant's phone requesting to purchase "80 powder and 20 blue." The defendant, at this time, was unaware that Jordan had died. Defendant agreed to the sale and agreed to meet near Jordan's house. This time, however, the police were waiting for the defendant to arrive. When the defendant arrived to complete the deal, he was arrested. The defendant was searched and found in possession of 20 blue fentanyl pills and two small approximately gram sized baggies of fentanyl powder.[3]

---

[3]     While some may look at this picture and opine this was only a small amount of fentanyl, to do so vastly underscores the harm associated with fentanyl. Fentanyl kills – even in very small amounts. To put the amount of fentanyl the defendant was selling into context, a user of powdered fentanyl will often burn very small amounts of it on a piece of foil and inhale the smoke. A user of powdered fentanyl will typically use it in quantities of less than 1/10 of a gram at a time. Two milligrams of fentanyl is considered a potentially lethal dose of fentanyl for an average adult. *Fentanyl: What You Should Know*, Health Beat, Northwestern Medicine (January 2025). Drug Enforcement Administration (DEA) laboratory testing in 2023 revealed that 7 out of 10 fentanyl-laced fake M/30 prescription pills analyzed contained a potentially lethal dose.

**Government's Sentencing Memorandum**                                                    **Page 7**



The officers advised defendant of his constitutional *Miranda* rights, in Spanish, and defendant confirmed he understood his rights.  Defendant had $551.00 cash in his wallet.  Police collected defendant's cellphone from the vehicle.  The defendant was subsequent interviewed, in Spanish by a Spanish speaking Officer.  The defendant told police that he would regularly meet Jordan near Jordan's house and do deals.  Defendant also explained that he sold "blues" and small one (1) to two (2) gram baggies of fentanyl powder.  Defendant said that he got the fentanyl from someone on the street, he is fronted the fentanyl, and pays his source back after he sells the drugs.  Police told defendant that Jordan died from a fentanyl overdose.  At this point, defendant then shook his head and said, "oh yeah? Oh no, oh no."  Defendant told police that, as far as he knew, he has not sold fentanyl to anyone that overdosed in the past.  Defendant did acknowledge that he knew fentanyl is dangerous and that it can cause people to die.

On January 25, 2024, the police arrested the defendant on state charges and referred the case to the local district attorney's office for state prosecution.  The case was not referred to the

---

*See* Press Release, Drug Enforcement Administration (DEA), Year in Review: DEA Innovates to Fight Fentanyl (Jan. 17, 2024), https://www.dea.gov/press-releases/2024/01/17/year-review-dea-innovates-fight-fentanyl (noting that DEA laboratory testing in 2023 revealed 7 out of 10 tested pills contained a potentially lethal dose of fentanyl).

**Government's Sentencing Memorandum**                                    **Page 8**

U.S. Attorney's Office for federal prosecution.  The defendant was subsequently charged in state court with criminally negligent homicide and multiple counts of manufacturing/delivering a controlled substance.  The case remained in state court for more than a year.

On May 5, 2025, the Multnomah County District Attorney's Office asked the U.S. Attorney's Office to review the case for federal prosecution.  On May 9, 2025, with the assistance of an agent from Homeland Security Investigations (HSI) and a detective with the Portland Police Bureau, a federal criminal complaint was filed charging the defendant with the distribution of fentanyl, a Schedule II controlled substance, resulting in death and serious bodily injury; and, possession with intent to distribute fentanyl, a Schedule II controlled substance.  ECF 1.  On June 18, 2025, the defendant was indicted by the federal grand jury on the same charges.  ECF 3.  The state case was then dismissed on July 1, 2025.

The defendant's federal trial started on April 6, 2026.  ECF 133.  On April 13, 2026, the federal jury convicted the defendant on both counts.  ECF 143.

**B.      Government's Sentencing Guideline Calculations.**

The Court, "in determining the particular sentence to be imposed," is required to consider the "sentencing range established" by the U.S. Sentencing Guidelines.  18 U.S.C. § 3553(a)(4).  "The Guidelines are 'the starting point and the initial benchmark,'. . . and are to be kept in mind throughout the process."  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting *Kimbrough v. United States*, 552 U.S. 85, 108 (2007)).  "All sentencing proceedings are to begin by determining the applicable Guideline range."  *Id*.

///

///

**Government's Sentencing Memorandum**                                                        **Page 9**

**Base Offense Level (38)**

Because the defendant distributed fentanyl that resulted in the death of an individual, his Base Offense Level is 38, pursuant to USSG § 2D1.1(a)(1).  PSR ¶ 22.

The defendant put the government to its burden of proof at trial and has not demonstrated any acceptance of responsibility.  PSR ¶ 19.  There are no adjustments to the Base Offense Level.  PSR ¶¶ 23 – 29.

Despite his prior drug dealing arrests, drug dealing charges, and drug dealing conviction, the defendant does not have any scoreable criminal history points and thus is within Criminal History category I.  PSR ¶¶ 33 – 39.

Defendant's advisory sentencing guideline range, with a Criminal History Category of I, is between 240 to 293 months' imprisonment.

D.      **Government's Recommended Sentence.**

Pursuant to 18 U.S.C. § 3553(a), we ask the Court to impose a sentence of 293 months' imprisonment, the high-end of the defendant's advisory sentencing guideline range, to be followed by a life term of supervised release.  Given the nature of this case, defendant's advisory sentencing guidelines, the societal harm caused by fentanyl, and the aggravating circumstances involving the defendant's knowledge that he was selling a poison that could kill people, his prior drug dealing arrests, his prior drug dealing charges, and his prior drug dealing conviction such a sentence is absolutely warranted, just, and necessary.  Such a sentence reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, and sends a clear and unequivocal message to those who sell fentanyl that they will be held accountable for the death and destruction they have inflicted upon the community.

To achieve this result, we ask that on Count 1 the Court impose a sentence of 293 months' imprisonment, to be followed by a life-term of supervised release.  There is a $100 assessment.

On Count 2, we ask the Court to impose the statutory maximum term of imprisonment of 240 months' imprisonment, to be followed by a three-year term of supervised release, to be served concurrently with the sentence imposed in Count 1.  There is an additional $100 assessment.

We ask the Court to leave the issue of restitution open for 90 days.

The defendant was selling fentanyl, an extremely addictive, destructive, and deadly poison that has been devastating the community.  According to law enforcement, in 2023 when this death resulted:

> Fentanyl is the primary drug threat in Oregon and Idaho, seized by law enforcement agencies in counterfeit pill, and increasingly, in powder form, as the purity has consistently increased, and prices remain low.  Fentanyl was identified as the primary cause of death either alone or with other substances in 51.5% of the drug-related deaths in Idaho during 2023 and 77% of the drug-related deaths in Oregon as of September 2023.

OREGON-IDAHO HIGH INTENSITY DRUG TRAFFICKING AREA (HIDTA) 2025 THREAT ASSESSMENT, June 2024, at 6 (https://oridhidta.org/reports).

The death toll from fentanyl is truly frightening.  For Americans aged 18 to 45, overdoses – primarily the result of illicit fentanyl – remain the leading cause of death.  *CDC Reports Nearly 24% Decline in U.S. Drug Overdose Deaths*, CDC NEWSROOM (Feb. 25, 2025); *DEA Administrator on Record Fentanyl Overdose Deaths,* GET SMART ABOUT DRUGS (August 17, 2024).

///

**Government's Sentencing Memorandum**                                             **Page 11**

In 2022, within the United States, fentanyl was responsible for an average of more than 200 deaths every day and a total of 73,654 people died from fentanyl overdoses. *Are Fentanyl Overdose Deaths Rising in the U.S.*, USAFACTS (Sept. 27, 2023). Here in Oregon, between 2015 and 2021, Oregon experienced a 932% increase in fentanyl overdose deaths. *Fentanyl by State Report*, FAMILIES AGAINST FENTANYL (Feb. 4, 2023). In 2022, Oregon alone experienced a total of 839 fentanyl related overdose deaths. OREGON HEALTH AUTHORITY OREGON DEPARTMENT OF EDUCATION FENTANYL & OPIOID RESPONSE TOOLKIT FOR SCHOOLS (January 2024).

In 2023, within Oregon there were 1,833 overdose deaths, and of those, 1,272 were the result of synthetic opioids, such as illicit fentanyl. *Oregon Overdose Prevention Dashboard*, OREGON HEALTH AUTHORITY (May 1, 2025). In 2023, "Oregon had the highest rate of increase in fentanyl deaths in the nation with a one-year increase of more than 67[%], compared to a national average of 5[%]." *Oregon, Washington see largest increases in fentanyl deaths since last year*, KPTV 12 (Sept. 26, 2023).

Even with the most recent decreases in overdose deaths, both nationally and in Oregon, "[f]entanyl continues to be the primary cause of drug overdose deaths in the United States," to include here within Oregon. *Fentanyl Continues to Be the Leading Cause of Overdose Deaths. What's Being Done to Combat Trafficking into the United States?,* WATCHBLOG: FOLLOWING THE FEDERAL DOLLAR, U.S. GOVERNMENT ACCOUNTABILITY OFFICE (Sept. 4, 2025); *Oregon overdose deaths are down, CDC data shows,* OREGON HEALTH AUTHORITY (May 16, 2025) (While "Oregon's overdose deaths decreased 22% between December 2023 and December 2024, a trend similar to that experienced nationwide . . . The count is still much higher than pre-

**Government's Sentencing Memorandum**                                    **Page 12**

pandemic years, with 1,480 deaths within that one-year time span, CDC data show."); *U.S. Overdose Deaths Decrease Almost 27% in 2024,* NATIONAL CENTER FOR HEALTH STATISTICS, U.S. CENTERS FOR DISEASE CONTROL AND PREVENTION (CDC) (May 14, 2025) (https://www.cdc.gov/nchs/pressroom/ releases/20250514) (in 2024 "there were there were an estimated 80,391 drug overdose deaths in the United States – a decrease of 26.9% from the 110,037 deaths estimated in 2023" and of those deaths, in 2023, 76,282 involved synthetic opioids (fentanyl) and in 2024, 48,422 involved synthetic opioids (fentanyl)).

The defendant was selling death.  He was selling an extremely deadly poison that he was placing directly into the hands of his customers, people who were struggling with – and too frequently losing to – their addiction.  The defendant reported to U.S. Probation that he came to the United States seeking to make money to support himself and his family in Honduras – we don't doubt that.  But, unfortunately at some point he decided to start making money by selling drugs – a fateful choice that contributed to the destruction these drugs have unleashed upon the country and also helped set in motion a series of events that culminated in the death of Jordan. As this case tragically shows, every time the defendant sold fentanyl, he perpetuated the cycle of addiction and every time the defendant sold fentanyl, he also risked selling the person a poison that could kill them.  The extraordinary lethality of fentanyl is truly frightening.  The defendant was not naïve to the danger because he knew that fentanyl could kill people.  He simply did not care.  The defendant prioritized his profits over the dangers he posed to his customers.

The defendant initially entered the country without permission and repeatedly along his path he turned to selling drugs to make money – heroin, cocaine, and then fentanyl.  In 2004, the defendant was arrested in San Francisco for the felony crime of transportation and sale of drugs.

**Government's Sentencing Memorandum**                                            **Page 13**

Presentence Report (PSR) ¶ 35.  In 2006, the defendant was again arrested in San Francisco for the felony crime of transportation and sale of drugs, the drug being heroin.  PSR ¶ 36.  In 2009, the defendant was convicted for the distribution of a controlled substance in the State of Washington and served a nine-month custodial sentence.  PSR ¶ 37.  He was not deterred and again he engaged in drug dealing.  In October 2014, in Denver, Colorado the defendant was arrested and charged for the felony crime of possession with intent to distribute controlled substance, the drug was heroin.  PSR ¶ 37.  The defendant failed to appear, and an arrest warrant was issued for him, which remains outstanding.  *Id.*  In August 2017, in Murry, Utah the defendant was again arrested for the felony crime of possession with intent to distribute controlled substance, this time involving heroin and cocaine.  PSR ¶ 38.  According to court records the defendant was turned over to immigration authorities before the charges were issued.  *Id.*  Another warrant was issued for his arrest, which is still outstanding.  *Id.*  Despite being deported from the country, he came back and once again started dealing drugs.  The defendant remains unrepentant and undeterred in his illegal activities.  He treated the freedom that comes with being in the United States as simply an opportunity to sell death – in both pill and powder form.

Accordingly, after evaluating the competing sentencing factors outlined in 18 U.S.C. § 3553(a) which include the nature and circumstances of the offense; the defendant's characteristics; the need for the sentence imposed to reflect the seriousness of the offense; the need for the sentence to promote respect for the law; the need for the sentence to afford adequate deterrence to criminal conduct; the need for the sentence to provide just punishment for the offense; the need to protect the public from further crimes of the defendant; and, the need to

**Government's Sentencing Memorandum**                                   **Page 14**

provide the defendant with needed training or other corrective treatment, we ask the Court to impose the high-end of the defendant's advisory sentencing guideline range. A sentence of 293 months' imprisonment, to be followed by a life term of supervised release is reasonable, just, and absolutely warranted. We ask the Court to impose it.

At the time of sentencing we anticipate that Jordan's mother, his father, as well as some of his family and friends will ask to address the Court. The family will also have a short video they will ask permission to play.

Following his time in custody, the defendant will likely be once again deported to Honduras.

In her Victim Impact Statement to the Court, his mother concluded by reminding her son that: "I love you Jordan, you will never be forgotten. Peace my love, Mom."

She is right, Jordan will never be forgotten.

Dated: August 5, 2026.                    Respectfully submitted,

                                          SCOTT E. BRADFORD
                                          United States Attorney


                                          /s/ *Scott Kerin*
                                          _____
                                          SCOTT M. KERIN, OSB # 965128
                                          Assistant United States Attorney

                                          /s/ *Nicole Bockelman*
                                          _____
                                          NICOLE M. BOCKELMAN, OSB #105934
                                          Assistant United States Attorney

                                          /s/ *Sarah Barr*
                                          _____
                                          SARAH BARR, WSBA #40758
                                          Assistant United States Attorney


**Government's Sentencing Memorandum**                                    **Page 15**